No. 43,342

J. C. NICHOLS COMPANY, a Corporation, *Appellee*, v. LOREN W. MEREDITH and EDITH A. MEREDITH, *Appellants.*

(391 P. 2d 136)

Opinion filed April 11, 1964.

*Ward D. Martin,* of Topeka, argued the cause, and *A. Harry Crane, Arthur L. Claussen, Harvey D. Ashworth,* and *Raymond L. Spring,* of Topeka, were with him on the briefs for the appellants.

*John W. Breyfogle, Jr.,* of Olathe, argued the cause, and *Peter A. Martin,* of Olathe, and *William V. McLeese,* of Kansas City, Missouri, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: J. C. Nichols Company, a corporation, plaintiff (appellee), brought this action against Loren W. Meredith and Edith A. Meredith, defendants (appellants), for the specific performance of a real estate contract dated April 9, 1959, whereby the Nichols company agreed to buy and the Merediths agreed to sell an unimproved 80-acre tract of land in Johnson county.

The Nichols company, through its agent C. A. Jones, contacted the Merediths on several occasions prior to April 9, 1959, with reference to purchasing their land. About April 6 Jones prepared a contract of sale and presented it to the Merediths. He was advised by the Merediths that they wanted their attorney, Cyrus Leland, to look over the contract prior to their signing. On April 7 or 8 Jones called at Leland's office and discussed the contract. Leland suggested several changes and Jones thereafter went to his office and redrafted the contract along the lines suggested by Leland as attorney for the Merediths.

On April 9 Jones then again contacted the Merediths to obtain their signatures to the contract as amended. He advised the Merediths he had complied with Leland's suggested changes by amending the contract. Jones and the Merediths read over the contract, and at Mr. Meredith's suggestion the provision for commission to Jones was deleted and also a contingent provision in the contract

was stricken. Mr. Meredith initialed the stricken provisions and after the corrections were made the contract was signed by both Mr. and Mrs. Meredith.

A few days later the Merediths took the signed contract to their attorney, Leland, and learned that he had not approved the contract as rewritten. On April 15 Leland wrote to the Nichols company stating the Merediths had brought a copy of the contract of sale to him and the contract seemed to agree with the revisions which he and Jones had discussed with the exception of two things: (1) the mortgage should provide that the holders of the note and mortgage will look only to the land sold in the event of default in payment of the note, and (2) neither the note nor the mortgage would contain a prepayment privilege. In the preparation of the note and mortgage for final closing these suggestions were followed and the note and mortgage prepared were minus these objectionable features. No further objections to the contract, note and mortgage were raised by the Merediths at any time.

Jones picked up the abstract of title at Leland's office on April 25. The title was examined and the opinion thereon was furnished to Mr. Leland on May 12. Some requirements were met and others were waived.

The correspondence between plaintiff's and defendants' counsel disclosed that plaintiff secured for defendants certain easements during the months of July and August which were beneficial to defendants. On August 28 defendants' counsel, by letter, advised the plaintiff he did not have any authority from the Merediths to set down the transaction for closing and as soon as he received word from defendants he would go ahead with checking the various papers.

On September 2 Mr. Meredith told Jones it would be quite an advantage to him and his wife if an exchange for some other farm could be worked out so that the Merediths could postpone some of their capital gains tax. At this time Jones began showing Meredith various farms in an attempt to help him out on his tax problem. It became obvious it was going to be difficult to work out an exchange of the farms, and on May 6, 1960, Meredith called Jones at the plaintiff's office for an appointment. Upon arrival Meredith said he just didn't want to go through with the deal. Thereafter plaintiff commenced this action for specific performance of the contract.

The case was tried by the court without a jury. On the evidence presented the trial court, in a well-analyzed opinion, found:

"1. The main defense of the defendants throughout the entire transaction is that they refused to perform under the April 9, 1959, contract because Mr. C. A. Jones, plaintiff's agent, did not submit the contract as re-drafted to Mr. Leland, the defendants' attorney, for his approval. From the standpoint of business and legal ethics, the Court unequivocally agrees with the defendants' contention. In order to constitute a valid defense, however, the defendants must show that they were misled by the terms of the contract they executed and/or misrepresentations were made by the plaintiff's agent to the extent that it would be inequitable for the Court to compel specific performance under all of the facts and circumstances of the case.

"2. Immediately upon their learning that Mr. Leland had not approved the contract as re-drafted, had the defendants or their attorney notified or indicated to the plaintiff they did not intend to be bound by the contract, the contract would have been at an end. The evidence was that beginning with Mr. Leland's letter of April 15, 1959, to the plaintiff's agent the entire course of conduct on the part of the defendants themselves as well as that of their attorney was that they intended to be bound by the contract. The objections raised by Mr. Leland in his letter, Plaintiff's Exhibit X, were agreed to by Mr. Jones at their meeting of April 17th. That such was the case is indicated from the testimony that the note and mortgage submitted by plaintiff to Mr. Leland on June 3, 1959, were minus these objectionable features. No other objections to the terms of the contract were subsequently raised by the defendants or their attorney, nor did the evidence show they had any objections to the terms thereof as modified at the present time.

"3. The testimony of Mr. Jones and Mr. Meredith regarding the conversation of June 27, 1959, is sharply conflicting. Again the Court is influenced by the evidence of events that transpired subsequent to that date. The course of conduct of the defendants and their attorney, particularly from June 27th to September 2nd, was consistent with the carrying out of the contract of April 9th as modified. Further, the uncommunicated intention of the defendants not to be bound by the contract was of no legal effect as to the plaintiff. Defendants in fact permitted their attorney to continue to act consistent with and in full recognition of the April 9th contract as modified for the entire period from on about April 15, 1959, to August 28, 1959.

"4. The postponement of performance of the contract on or about September 2, 1959, in an effort to work out an exchange of property for tax-saving purposes was at the defendants' request, and said request and plaintiff's acquiescence therein did not amount to an abandonment or repudiation of the April 9th contract. At most, performance of the written contract was held in abeyance at the defendants' request.

"5. From all of the facts and circumstances of the case the Court finds generally in favor of the plaintiff and against the defendants and further finds that the contract of April 9, 1959, as modified, should be enforced and specific performance thereof is decreed. . . ."

At the outset it should be stated we approach this case with full recognition of the fundamental and universal rule to the effect that our province is to examine the record in the light most favorable to the prevailing party below, that we are not triers of fact, and that when findings of the trial court are supported by competent substantial evidence they are binding and conclusive on appeal. (*Curry v. Stewart*, 189 Kan. 153, 155, 368 P. 2d 297; *Dryden v. Rogers*, 181 Kan. 154, 157, 309 P. 2d 409; *In re Estate of Johannes*, 173 Kan. 298, 300, 245 P. 2d 979.) The record discloses the findings of fact made by the trial court are amply sustained by the evidence.

Defendants first contend it was error for the trial court to decree specific performance of the contract which was obtained by fraud and misrepresentation. They base their argument on the ground the April 9, 1959, contract was not submitted to their attorney, Leland, prior to the time they signed it. It is noted the court did not find any fraud or misrepresentation. It found only that from the standpoint of business and legal ethics plaintiff should have submitted the contract to defendants' counsel prior to their signing. It further found that in order to constitute a valid defense it was incumbent upon defendants to show they were misled by the terms of the contract they executed or that false representation was made to defendants to the extent it would be inequitable for the court to compel specific performance.

The contract was signed April 9, and on April 15 defendants were advised by their counsel that he had not approved the contract as rewritten by Jones. With knowledge of this fact defendants did not repudiate the contract or ask a rescission of it. On the contrary, in going on with the performance of their contract and inviting performance for a period of over twelve months they indicated an intention to abide by the contract and in this manner waived any misrepresentation, if any were made.

The evidence discloses there were no objectionable features to the contract which had not been complied with by plaintiff, nor does the evidence disclose that the contract as modified was inequitable. If defendants felt the contract had been misrepresented to them and that they signed without their counsel's approving the same, they learned of these facts on April 15, 1959. They did not repudiate the contract until June 1960. It is a well-settled rule in this state that if one is induced by fraud or misrepresentation to enter into a contract and afterwards learning of the fraud or the

substance of it recognizes it as a binding contract he waives the fraud or misrepresentation and loses his right to rescind the contract. A party is not allowed to play fast and loose in such a transaction, and if he would disaffirm a contract for fraud he must act promptly after the discovery of the fraud or lose the right of rescission. (*Bankers Mortgage Co. v. Robson*, 123 Kan. 746, 751, 256 Pac. 997.)

In *Morse v. Kogle*, 162 Kan. 558, 178 P. 2d 275, this court, in a well-annotated opinion discussing the right to rescind a contract for fraud, stated it was well settled that one who seeks to rescind a contract for fraud must do so promptly upon discovery of the fraud, and if by words or conduct he treats the contract as binding after having knowledge of the fraud, he thereby affirms the contract and cannot rescind. It was further stated that ordinarily an express ratification is not necessary in order to defeat the remedy of rescission. Acts or conduct, inconsistent with an intention to avoid it, or in recognition of the contract, have the effect of an election to affirm it. For cases cited supporting the mentioned rules of law and other applicable rules see *Cleaves v. Thompson*, 122 Kan. 43, 251 Pac. 429; *Turner v. Jarboe*, 151 Kan. 587, 100 P. 2d 675; *Wells v. Albers*, 122 Kan. 643, 253 Pac. 412; *Dobie v. Sears Roebuck & Co.*, 164 Va. 464, 180 S. E. 289, 107 A. L. R. 1026; and *McLean v. Clapp*, 141 U. S. 429, 12 S. Ct. 29, 35 L. Ed. 804. Only recently in *Brown v. Wolberg*, 181 Kan. 919, 317 P. 2d 444, we again emphasized the equitable remedy of rescission is open only to the diligent, and one who seeks to rescind a contract on the ground of fraud and misrepresentation must do so with reasonable promptness after the discovery of the fraud.

Other contentions advanced by the defendants have been examined and considered, but in view of the determinative question in this case, as heretofore related, are found to be without sufficient merit to justify a reversal. The judgment of the trial court is affirmed.

FONTRON, J., not participating.