Phillip C. Lacey McPherson City Attorney Municipal Center, 400 East Kansas Avenue P.O. Box 1008 McPherson, Kansas 67460
Dear Mr. Lacey:
As City Attorney for the City of McPherson you pose several questions about the interpretation of K.S.A. 1997 Supp. 58-3212 which imposes requirements on the responsible party of a recreational trail created pursuant to subsection (d) of 16 U.S.C. § 1247 (1983). K.S.A. 1997 Supp. 58-3211 defines a responsible party as any person, for profit entity, not-for-profit entity or governmental entity that is responsible for developing, operating or maintaining a recreational trail.
Your first question is in two parts and involves K.S.A. 1997 Supp.58-3212(a)(5) which requires the responsible party to maintain the trail "in a condition that does not create a fire hazard." You inquire what constitutes a "fire hazard" and who makes the determination regarding the condition of the trail.
The Recreational Trails Act does not address your question and legislative history is silent on the issue. We must, as a practical matter, assume the Legislature intended that laws specific to the issue would be consulted where those laws are appropriate. See Minutes, House Committee on Energy and Natural Resources, February 1, 1996, Attachment 19 (a barbed wire fence would not be appropriate for fencing along an urban trail and some cities ban its use; barbed wire is not used around recreational facilities like playgrounds and parks.) In the case of the prevention of fire, it makes sense to refer to laws which govern the prevention of fire for safety reasons. Thus it is our opinion that what constitutes a fire hazard is a fact question to be addressed by the Fire Marshal pursuant to the Kansas Fire Prevention Code, K.S.A. 31-132 etseq., and the rules and regulations adopted pursuant thereto. See RobertE. Esry and Co. v. Dibbern, 228 Kan. 784 (1980) (whether a condition constitutes a fire hazard is a question of fact). The Fire Marshal is charged with assisting any municipality (defined as a city, county or any other political subdivision of this state) in the enforcement of the fire prevention code which is designed to minimize fire hazards and disasters in loss of life and property. K.S.A. 31-143.
Your second question is in three parts and concerns subsection (a)(9) which requires that the responsible party grant easements to adjacent property owners to permit such owners to cross the recreational trail in a reasonable manner. You inquire what is a "reasonable manner"; whether each landowner would be entitled to one crossing; and whether the duty must be consistent with the requirements of K.S.A. 66-301 to 66-303 and amendments thereto.
Subsection (a)(9) states:
"The responsible party . . . shall:
. . . .
 "grant easements to adjacent property owners to permit such owners to cross the recreational trail in a reasonable manner consistent with the use of the adjacent property and with K.S.A. 66-301 through 66-303, and amendments thereto."
In regard to what is a reasonable manner, what is reasonable depends on the circumstances. Singer Co. v. Makad, Inc., 213 Kan. 725 (1974); In reCity of Salina, 196 Kan. 560 (1966). The statute attempts to place "reasonableness" within the context of the use of the adjacent property and the provisions established in K.S.A. 66-30l through 66-303. These statutes require a railroad to provide a farm with a farm crossing (suitable for animals, farm implements and vehicles) when the railroad has run through the farm so as to divide it. Thus in order for the crossing to be reasonable, one must consider the use being made of the adjacent property and additional considerations such as whether the trail divides a landowner's property. It is our opinion that whether each landowner is entitled to one crossing depends on whether the trail divides the property, and what is reasonable depends on the use of the adjacent property, for example, a farm would require such a crossing but unused pasture land might not.
Your third question is in two parts and concerns K.S.A. 1996 Supp.58-3212(a)(10)(A) which requires the responsible party to "maintain any existing fencing between the trail and adjacent property." You inquire whether the responsible party may maintain a fence in an existing condition of disrepair, or whether the responsible party must repair the fence. If the responsible party must repair the fence, you question whether the responsible party may require the adjacent landowner to pay one-half of the cost of repair, particularly if the existing fence is in such condition that it does not constitute a "legal fence" as provided by state law.
To maintain a fence means to keep it in due condition. Webster's Encyclopedic Unabridged Dictionary of the English Language 865 (1983). We can assume that the Legislature did not enact a futile provision of law since the Legislature is presumed to intend that a statute be given a reasonable construction so as to avoid unreasonable or absurd results.State v. Crank, 262 Kan. 449, (1997), citing State v. Roudybush,235 Kan. 834, 846 (1984). To construe the statute as the question suggests would lead to an absurd result. Thus it is our opinion that the duty imposed by subsection (a)(10)(A) is to repair the fence and maintain it in due condition. If, as you indicate, the fence must be replaced rather than repaired, then it is our opinion that the fence no longer qualifies as "existing fencing" and it is appropriate to refer to subsection (a)(10)(D). This provision requires that the responsible party pay one-half the cost of installing fencing at the request of the adjacent landowner. Our answer to question five deals with this subsection in more detail. See also Attorney General Opinion No. 98-9.
Your fourth question is in two parts and deals with K.S.A. 1997 Supp. 58-3212(a)(10)(D) which states:
"The responsible party . . . shall:
. . . .
 "on request of an adjacent property owner, pay one-half the cost of installing fencing between the trail and such property owner's adjacent property with a fence of the class requested by such property owner, if not all remaining sides of such property are fenced."
You inquire whether we agree that the subsection requires the adjacent landowner to install the fence, whereupon the responsible party is required to pay one-half the cost. It is our opinion that the subsection does not present an ambiguity and clearly requires the responsible party to pay one-half the cost. See Attorney General Opinion No. 98-9 (the responsible party's duty to pay one-half the cost cannot be enforced without the property owner's contracting with a fencing company; however, there is no requirement that the landowner pay all the costs up front.) The second part of your fifth question is whether an adjacent property owner may erect a fence of a higher class along the trail than what is on other sides of the adjacent property, if not all the remaining sides of the adjacent property are fenced. See Attorney General Opinion No. 98-9 (the fencing requirement must be applied with regard to what is reasonably necessary in material and workmanship to make it appropriate to the purpose of protecting the landowner's legitimate concerns) for a discussion of the type of fencing required to be erected between the adjacent property and the trail.
Your fifth question involves K.S.A. 1997 Supp. 58-3212 (e) which states:
 "The provisions of this section may be modified or supplemented by any city governing body for recreational trails within the corporate limits of such city in the manner provided in K.S.A. 12-137 et seq. and amendments thereto. If a city governing body adopts requirements in addition to those provided by this section, the city shall pay all costs of compliance with such additional requirements."
You inquire whether the provisions of K.S.A. 1997 Supp. 12-520(a)(2) authorize a city who is a responsible party to annex the entire trail if the proper procedure is followed to modify the recreational trails act pursuant to subsection (e).
A perusal of the statute does not reflect any authority to modify the act to authorize the annexation of the property in question. The trail was created pursuant to the National Trails System Act (commonly known as the Trails Act), 16 U.S.C. § 1247(d), which was adopted by Congress to implement a declared national policy of preserving railroad rights-of-way for future reactivation of rail service and to encourage the use of these rights-of-way as recreational trails on an interim basis. In accordance with the statute, such trail use is not treated as an abandonment of the use of such rights-of-way and thus such a construction of the statute authorizing annexation of the property is preempted because it directly conflicts with the federal legislation. Accordingly, it is our opinion that K.S.A. 1997 Supp. 58-3212(e) cannot be modified to authorize a city to annex any part of the trail. We believe that the statute is clear on its face and is intended to allow the modification or supplementation of the statute by having a city adopt requirements in addition to those found in the provision, so long as the city pays all costs of compliance with such additional requirements.
Your last question is in two parts; you inquire whether K.S.A. 1996 Supp. 58-3215 provides the exclusive remedy against a responsible party for failure to comply with the duties imposed by the state Act, and whether the section precludes private individuals such as adjoining landowners from bringing a civil action against the responsible party for failure to comply with the provisions of the Act.
K.S.A. 1996 Supp. 58-3215 states:
 "A city or county may institute procedures for recourse against the responsible party pursuant to 16 U.S.C. § 1247 (1983) and 49 C.F.R. § 1152.29
(1986) upon the failure of the responsible party to comply with the provisions of this act."
Whether the statute provides an exclusive remedy depends upon whether the statute precludes landowners from bringing a civil action against the responsible party for failure to comply with the duties imposed by the statute. For this reason we will address this question first. Generally, the test of whether one injured by the violation of a statute may recover damages from the wrongdoer in the form of a civil action is whether the Legislature intended to give such a right. Greenlee v. Boardof County Com'rs of Clay County, 241 Kan. 802, 804, (1987) ("The legislative intent to grant or withhold a private cause of action for a violation of a statute, or the failure to perform a statutory duty, is determined primarily from the form or language of the statute.") However the absence of such express provisions does not necessarily negate a legislative intent that the statute shall affect private rights, unless the duties owed are owed to the public at large. In determining legislative intent we may consider the nature of the evil sought to be remedied and the purpose the statute was intended to accomplish. Kansas has adopted the test in Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080;45 L.Ed.2d 26 (1975) for determining whether a private cause of action should be implied from a statute and lists four relevant factors to be considered:
 "First, is the plaintiff `one of the class for whose especial benefit the statute was enacted,' (1916) (emphasis supplied) — that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?. And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? (Citations omitted)." Greenlee, 241 Kan. at 805 (1987) citing Cort v. Ash, Ibid.
Applying the factors, we find that landowners are the class for whose benefit at least some of the statutory duties (imposed on the responsible party by K.S.A. 1997 58-3212) were enacted. Subsection (a) (9) dealing with the granting of easements to adjacent property owners to cross the recreational trail and the four provisions in subsection (a)(10) dealing with fencing between the trail and the adjacent landowner were clearly enacted for the adjoining landowners' benefit.
Second, we must determine whether the Legislature gave any indication of legislative intent, explicitly or implicitly to either create or deny the implied cause of action in question. While the Legislature provided an explicit remedy by authorizing a city or county to institute procedures for recourse, legislative history is silent on the issue of an implied cause of action by the landowners. [Testimony before the Legislature which indicates that the Legislature assumed the federal statute (which created the trail) provided the exclusive remedy, may explain why legislative history is silent on the issue of a landowner's implied cause of action. Minutes, Senate Committee on Energy and Natural Resources, March 18, 1996.]
The third factor involves determining whether implying a remedy of an implied private cause of action is consistent with the underlying purposes of the legislative scheme. The legislative scheme imposes both statutory duties which deal with the local concerns of public safety and access, as well as statutory duties dealing with the privacy concerns of adjacent landowners of a recreational trail. The provisions of the Act clearly indicate that the Legislature intended to protect both the public at large and the landowners directly affected by the creation of the trail. Implying a private cause of action for the breach of the duties specifically owed to the landowners is consistent with the legislative scheme which attempts to safeguard both the interests of the public generally and the interests of a specific class of adjoining landowners. In Fasse v. Lower Heating Air Conditioning, Inc., 241 Kan. 387 (1987), the issue of an implied cause of action arose in the context of a third-party beneficiary. The court found that workers, as third party beneficiaries, had a private cause of action to assert a claim for Davis-Bacon Act wage scale because the employer had agreed to be bound by K.S.A. 44-201. When the defendant argued that K.S.A. 44-201 did not provide the plaintiff with a private cause of action the court stated:
 "Generally, the common-law procedure is regarded as the proper remedy where a right is created or a duty is required by statute and no adequate statutory remedy is provided for its enforcement or breach or where the special remedy created by statute is void. 1 Am.Jur.2d, Actions § 75. Courts do not require explicit statutory authorization for familiar remedies to enforce statutory obligations. When the legislature has left the matter at large for judicial determination, the court's function is to decide what remedies are appropriate in light of the statutory language and purpose and the traditional modes by which courts compel performance of legal obligations. If civil liability is appropriate to effectuate the purposes of a statute, courts are not denied this traditional remedy because it is not specifically authorized. " Anderson Cattle Co. v. Kansas Turnpike Authority, 180 Kan. (1957). See, also Fasse, 241 Kan. at 392-393.
Like in our circumstances, the statute at issue in Fasse, above, provided for punishment for violations, but provided no civil remedies for those damaged by the failure to comply with the statute. If the Legislature assumed as indicated by legislative history that the federal statute was the exclusive remedy and if this remedy is ineffective, then the Legislature has effectively left the matter up to judicial determination. See Attorney General Opinion No. 98-9 (concluding that K.S.A. 1997 Supp. 58-3216, the statute in question, provides an ineffective remedy.)
Thus because it appears that the Legislature left the question of an implied cause of action for judicial interpretation, our function is to decide what remedies are appropriate in light of the statutory language and purpose and the traditional modes by which courts compel performance of legal obligations. In our opinion, civil liability is appropriate to effectuate the purpose of protection of the landowners' interests. Additionally, we opine that the remedy provided by K.S.A. 1997 Supp.58-3215 is not an exclusive remedy.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Guen Easley Assistant Attorney General
CJS:JLM:GE:jm